[Cite as *State v. Bentley*, 2023-Ohio-1792.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,
CITY OF PAINESVILLE,

Plaintiff-Appellee,

- vs -

BRIAN E. BENTLEY,

Defendant-Appellant.

CASE NOS. 2022-L-076
2022-L-080

Criminal Appeals from the
Painesville Municipal Court

Trial Court Nos. 2020 CRB 1832 A
2020 CRB 1832 B

**O P I N I O N**

Decided: May 30, 2023
Judgment: Affirmed

*Joseph Hada*, Madison Township Prosecutor, 1392 SOM Center Road, Mayfield Heights, OH 44124 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}  Defendant-appellant, Brian E. Bentley, appeals from his conviction for Assault in the Painesville Municipal Court.  For the following reasons, we affirm the judgment of the lower court.

{¶2}  On September 10, 2020, a Complaint was filed in the Painesville Municipal Court, alleging that Bentley had committed Aggravated Trespass, a misdemeanor of the first degree, in violation of R.C. 2911.211(A), and Assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A).

{¶3} On December 14, 2020, Bentley filed a Demand for Trial by Jury, the matter was set and continued, and a bench trial was ultimately held. At the conclusion of the trial, the court stated "I don't think [Bentley's] at fault for the aggravated trespass because I don't think he went there initially to be an aggravated trespasser, but he's certainly guilty of the assault." In a form Judgment Entry, the following, with certain language circled, crossed out, or underlined, was included: "The defendant * * * entered a plea of guilty/no contest: (was found guilty after (jury) trial) to the charges of: AGGR. TRESPASS M1 ASSAULT M1. The defendant is hereby found guilty of those charges. The remaining charges are dismissed at the request of the State."

{¶4} Bentley appealed and we held that the lower court lacked jurisdiction to conduct a bench trial since Bentley had filed a request for a jury trial and had not waived that right. *State v. Bentley*, 11th Dist. Lake Nos. 2021-L-089 and 2021-L-090, 2022-Ohio-1099, ¶ 13. We reversed the conviction and remanded for a new trial, observing that Bentley has a right to a jury trial unless properly waived. *Id.* at ¶ 14.

{¶5} On remand, Bentley filed a written waiver of his right to a jury trial and the matter proceeded to a bench trial. Prior to the trial, defense counsel argued that double jeopardy barred retrial on the Aggravated Trespass charge since Bentley had already been acquitted. The court determined it should retry this charge since its prior judgment was void due to its lack of jurisdiction to conduct a bench trial. The following pertinent testimony and evidence were presented at trial.

{¶6} On September 7, 2020, Officer Ryan Shannon of the Madison Township Police Department responded to a call at the home of Shauna Adkins. Adkins was "extremely upset" and described that there had been a disagreement between her

2

children and a neighbor child, and a subsequent confrontation occurred in which the child's father, Bentley, assaulted her. Shannon observed facial injuries to Adkins, including redness and swelling to her left eye.

{¶7} Shannon spoke with Bentley, who indicated that Adkins had come to his home to discuss the issue between their children and Bentley subsequently went to Adkins' house to talk with her further. He described that "she came charging out of the back door with her hand raised leading him to believe that she was going to strike him." According to Shannon, Bentley first indicated that she tried to hit him and "he changed that to she did hit him." Shannon observed that Bentley had redness on his face and injuries to his left hand. Sergeant Douglas Covert also made contact with Bentley who was cooperative and indicated that he had acted in self-defense.

{¶8} Shauna Adkins testified that on the date of the incident, her son indicated that he had been bullied by a neighbor child, Bentley's son. She went to Bentley's house and told him and the child's mother about the incident. They did not want to do anything and "pretty much shut the door in [her] face." On her walk home, she became aware of a conflict between the same neighbor child and her older son.

{¶9} After Adkins returned home, Bentley came to her residence and knocked on the door. She stepped outside, he began cursing at her, and stated that she sent her son to beat up his child. He then punched her in the left eye with his right hand. Adkins described the impact of the hit, stating: "At that point, the impact to my eye was so strong it spun my body around, my head bounced off a rock, and I hit the ground." Adkins indicated that before Bentley hit her, she did not gesture at him, make aggressive movements, or touch him. After she was hit, her brother, Shane, came out of the house,

3

tackled Bentley, and the two began fighting. Bentley then left, she called the police, and she was taken to the emergency room. She was treated for a concussion and lost central vision in her left eye.

{¶10} Patrolman Justin Dahl took photographs of Adkins' injuries the day after the incident. He described that her left eye was swollen with a bruise about the size of a golf ball. Her forehead and back of her head were swollen and she had a contusion on her eyelid. There were also bruises on her leg and elbow and a scratch on her wrist.

{¶11} Brooke Spencer, Bentley's girlfriend, lives with Bentley and their children. She testified that on September 7, Adkins came to their door complaining about their children "playing chicken on their bikes" and was being loud and aggressive. As Adkins was walking away, she made a comment which Spencer believed meant Adkins was going to have her child beat up Spencer and Bentley's child. Spencer subsequently discovered that her son had been "beat * * * up" by Adkins' child. After she informed Bentley of this incident, he went to Adkins' home. According to Spencer, Adkins and Bentley argued and Adkins began "backing him up to the car" in the driveway, she punched him, and Bentley hit her back. The brother than rushed from the house, tackled Bentley, and threatened him.

{¶12} Bentley described the incident originating when Adkins came to their home and was discussing with his girlfriend an incident between their sons. Adkins made a comment about having her son take care of it. He later learned that his son had been beaten up by Adkins' son. He instructed his girlfriend and children to go to Adkins' home to call the police on her. He also went to her home and knocked on the door with no response. He then approached the side of the house and she came out "angry and

4

Case Nos. 2022-L-076 and 2022-L-080

aggressive * * * with her hand up telling me that I wasn't going to threaten with the police." She was pointing and cursing and then punched him in his left eye. He then hit her "one time in self-defense." He explained that she had been walking toward him so he had his back up against a van and "had nowhere to go." Pictures of redness on his face were presented that he testified was caused by Adkins. After he returned the punch, her brother tackled him and they got into a tussle.

{¶13} The court found a lack of evidence that Bentley went on the property to commit an offense for the purposes of an Aggravated Trespass conviction. It found him guilty of Assault. It sentenced him to a term of 90 days in jail and 90 days of electronically monitored house arrest. Bentley's requests to stay the sentence were denied in the trial court and this court.

{¶14} Bentley timely appeals and raises the following assignments of error:

{¶15} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

{¶16} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶17} "[3.] The trial court erred to the prejudice of the defendant-appellant when it retried him on the offense of aggravated trespass after he had been previously found not guilty of that offense in violation of the defendant's protection against double jeopardy and in violation of the defendant's right to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶18} In his first and second assignments of error, Bentley argues that the lower

5

Case Nos. 2022-L-076 and 2022-L-080

court erred in denying his motion for acquittal and that his conviction for Assault was against the weight of the evidence, raising questions as to the credibility of the victim and whether he struck her in self-defense. We will address these assignments jointly as they are interrelated.

{¶19} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." (Citation omitted.) *State v. Hastings*, 11th Dist. Portage No. 2020-P-0014, 2021-Ohio-662, ¶ 23. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶20} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the

6

Case Nos. 2022-L-076 and 2022-L-080

witnesses, and whether, "in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "[A] finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency." (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

**{¶21}** To convict Bentley of Assault, the State was required to prove, beyond a reasonable doubt, that he did "knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(A).

**{¶22}** In relation to the manifest weight, Bentley argues that there was a lack of evidence to corroborate Adkins' version of events and emphasizes that both he and his girlfriend testified that Adkins hit him first and he responded in self-defense.

**{¶23}** "In cases involving the use of non-deadly force, the elements of a valid self-defense claim are 'the defendant was not at fault in creating the situation, and the defendant had a genuine belief that he was in imminent danger of bodily harm.'" (Citation omitted.) *State v. Heald*, 11th Dist. Lake Nos. 2021-L-111 and 2021-L-112, 2022-Ohio-2282, ¶ 21. "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." R.C. 2901.05(B)(1).

**{¶24}** Here, two opposing versions of events were established by the State and the defense. Under the State's version, Bentley was not threatened or assaulted and,

7

thus, had no belief that he faced a danger of bodily harm while Bentley presented testimony that he was punched first and struck Adkins in response. A determination of whether Adkins was the aggressor and Bentley was merely acting to defend himself turns upon an evaluation of the credibility of the witnesses. Disputes in credibility for the purposes of evaluating self-defense are best resolved by the trier of fact. It has been held that "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version" and rejected the defendant's claim of self-defense. *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 49 (10th Dist.); *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 21 (when presented with conflicting testimony regarding whether the defendant was acting in self-defense, "the jury was in the best position to assess the credibility of the testifying witnesses") (citation omitted); s*ee State v. Thomas*, 2019-Ohio-2795, 139 N.E.3d 1253, ¶ 43 (11th Dist.) (conflicting testimony about who pulled their weapon first raised a factual dispute about self-defense hinging on credibility). In weighing the witness testimony supporting a claim of self-defense, the trier of fact is "free to believe or disbelieve the testimony of the witnesses" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43.

{¶25} Here, a finding by the trier of fact that Adkins was truthful about the details of the assault was not against the weight of the evidence. There is nothing inherently lacking in credibility in Adkins' testimony. Adkins suffered injuries serious enough that she sought medical treatment, which were corroborated by police testimony. Officer

8

Shannon observed that, when Bentley spoke with police, he first indicated Adkins "had tried to hit him" but "he changed that to she did hit him." This conveyed that Bentley was inconsistent in his story of the events that took place. Further, although Bentley argued that Adkins had ordered her son to beat up their child and was then assaulted by her, Adkins was the one who sought police assistance. Such facts support a determination of Adkins' credibility. The fact that Bentley and his girlfriend both testified to his version of events is not determinative: "[t]he mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶26} Bentley argues that Adkins' testimony about her injuries was discredited because, although claimed to be serious, the prosecutor charged him only with misdemeanor Assault. We decline to consider the prosecutor's rationale for bringing charges. This does not impact whether the State proved the Assault offense with which he was charged. The testimony and evidence presented support a finding that his conviction for Assault was supported by the weight of the evidence.

{¶27} Bentley also argues that there was not sufficient evidence to demonstrate that he was the aggressor. As we have found, the weight of the evidence supported a finding that he was the aggressor and did not commit the acts in self-defense, this court "need not engage in a separate analysis of sufficiency." *State v. Taylor*, 2022-Ohio-3611, 198 N.E.3d 956, ¶ 8 (11th Dist.). We further note that, as Bentley's arguments relate to the credibility of the victim's testimony, "an evaluation of the witnesses' credibility * * * is not proper on review for evidentiary sufficiency." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

9

{¶28} Finally, Bentley observes that "the trial court never actually found Mr. Bentley guilty or that the state proved the charges beyond a reasonable doubt, but rather, stated, 'I do find that there is enough evidence to find that he did assault [the complainant].'" We do not find error relating to this issue. The court's indication that there was evidence to find Bentley committed the offense, coupled with its statement in the Judgment Entry that he was found guilty of Assault, constituted a conviction. Bentley points to no authority requiring the court to state that it found him guilty beyond a reasonable doubt. We have no reason to question that the court made this finding under the burden of proof required to convict Bentley as we "must presume that the trial court applied the law correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125, 480 N.E.2d 414 (1985); *see State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 10 ("[i]n a bench trial, where the record contains no substantiation that the trial court applied the wrong standard, we may presume regularity of the proceedings").

{¶29} The first and second assignments of error are without merit.

{¶30} In his third assignment of error, Bentley argues that the court improperly tried him for Aggravated Trespass in violation of principles of double jeopardy since he had previously been acquitted of this offense.

{¶31} "The double-jeopardy protections of the United States Constitution's Fifth Amendment, which is applicable to the states under the Fourteenth Amendment and Article I, Section 10 of the Ohio Constitution, prohibit multiple prosecutions for the same offense." *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141, ¶ 2. This includes "a second prosecution for the same offense after acquittal." (Citation omitted.) *Id.* at ¶ 15. "[T]he Double Jeopardy Clause affords the defendant who obtains

10

a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense." (Citation omitted.) *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, ¶ 10. "A de novo standard of review is applied to the trial court's determination regarding the application of the double jeopardy clause." *State v. Miller*, 2020-Ohio-3854, 156 N.E.3d 297, ¶ 56 (11th Dist.).

{¶32} There is no question that Bentley was tried a second time for Aggravated Trespass. Although the lower court had previously found that Bentley was not "at fault for the aggravated trespass because I don't think he went there initially to be an aggravated trespasser," i.e., there was not sufficient evidence of a required element of the offense, it tried him for this offense a second time. The State contends, however, that the doctrine of double jeopardy does not apply because the remand "negat[ed] the trial court's decision on both charges from the first trial."

{¶33} This court has found double jeopardy concerns are not implicated in certain circumstances where a defendant was tried but the trial court lacked jurisdiction. *State v. Keim*, 11th Dist. Trumbull Nos. 2020-T-0050, et al., 2021-Ohio-793, ¶ 13. In *Keim*, this court found no error in denying a motion to dismiss based on double jeopardy where the trial of a defendant was commenced but the case was dismissed part-way through the trial because the court realized it lacked jurisdiction. This analysis was based on the fact that the judgments would be void and jeopardy could not attach where the court lacked subject matter jurisdiction. *Id.*

{¶34} In the present matter, however, this court reversed and remanded for a new trial based on a lack of jurisdiction to conduct a bench trial due to the failure to obtain the waiver of the right to a trial by jury. *Bentley*, 2022-Ohio-1099, at ¶ 13. *Keim*'s rationale

11

Case Nos. 2022-L-076 and 2022-L-080

is premised on the fact that a "plea of former jeopardy cannot be based on a void judgment." *Keim* at ¶ 10, citing *Foran v. Maxwell*, 173 Ohio St. 561, 184 N.E.2d 398 (1962). However, "[i]t is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable." (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12; *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 26 ("when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void"). Jurisdiction over the particular case "involves consideration of the rights of the parties" and connotes "the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19.

{¶35} It has been held that "any defect in failing to obtain a properly executed written jury trial waiver is a defect in the trial court's *exercise of its jurisdiction* and not a lack of subject matter jurisdiction in the first instance." *State v. Van Dyne*, 5th Dist. Guernsey No. 15CA26, 2016-Ohio-1476, ¶ 17. *See also State v. Downs*, 11th Dist. Ashtabula No. 2004-A-0084, 2005-Ohio-4646, ¶ 14 (where there was no waiver of the right to a jury trial, "the county court's exercise of jurisdiction was in error"). Here, the issue was not whether the court had authority to hear the type of case, as it was the correct court in which to proceed with the charges, but whether it had jurisdiction to hear the matter in relation to the rights of the individual party, i.e., where Bentley did not waive the right to a jury trial. Since the error made by the trial court in holding a bench trial

12

without a proper waiver rendered its judgment voidable rather than void, the rationale in *Keim* is not applicable here to preclude application of the principles of double jeopardy.

{¶36} Presuming that the court erred in finding that it could retry the Aggravated Trespass charge, we find no reversible error. Bentley concedes that, although improperly tried, he was acquitted of Aggravated Trespass at the second trial. He contends, however, that by allowing the State of Ohio to introduce "inadmissible/irrelevant evidence" on the charge of Aggravated Trespass at the retrial, "the entire proceeding was tainted by evidence that the trial court should not have heard." He requests that the conviction for Assault be reversed due to presentation of such evidence.

{¶37} To be convicted of Aggravated Trespass, it must be proven that the defendant did "enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to that person." R.C. 2911.211(A)(1).

{¶38} Here, the evidence of whether an assault occurred, relating to causing physical harm to Adkins, was equally relevant to the charges of Assault and Aggravated Trespass. Evidence relating to the acts of the assault would be admissible regardless of whether Aggravated Trespass was tried. Bentley observes that evidence relating to his "arrival at the complainant's home, the duration of the visit, and how/when he exited were irrelevant to the charge of Assault." However, evidence relating to his activities in arriving at the home and the activities he committed while there were intertwined with testimony relating to his actions in the assault. Describing the assault necessarily required explaining his presence at the residence where the assault took place. Even if some

13

testimony relating to his actions on the premises was not expressly relevant, its admission is harmless as there is nothing in the record to indicate that it resulted in a conviction for Assault, which stemmed from his actions in hitting Adkins. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 111 (finding harmless error since there was "little chance" irrelevant testimony affected defendant's convictions).

{¶39} Bentley also argues that retrying him for Aggravated Trespass "forced both him and defense counsel to strategize in a way to defend against both charges as opposed to just the Assault." It is unclear how being tried for both offenses impacted his trial strategy. His defense was premised upon the fact that he acted in self-defense. Any defense presented to the Assault charge necessarily constituted a defense for the Aggravated Trespass since it addressed the element of "causing physical harm." Bentley presents no argument demonstrating how being tried solely for Assault would have changed this strategy.

{¶40} The third assignment of error is without merit.

{¶41} For the foregoing reasons, Bentley's conviction for Assault in the Painesville Municipal Court is affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.

14