[Cite as *State v. Knowlton*, 2023-Ohio-3759.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

SHANE PATRICK KNOWLTON, SR.,

        Defendant-Appellant.

**CASE NO. 2023-A-0013**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00355

## **O P I N I O N**

Decided: October 16, 2023
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Christine Davis* and *Christopher R. Fortunato*, Assistant Prosecutors, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Gwirtz Law, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Shane Patrick Knowlton, Sr., appeals from his conviction for Felonious Assault in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On August 17, 2021, Knowlton was indicted by the Ashtabula County Grand Jury for Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2). The count included a firearm specification under R.C. 2941.145(A).

{¶3} A jury trial was held on January 9 and 10, 2023. The following pertinent testimony and evidence were presented:

{¶4} Ryan McBride testified that, in July 2021, he lived with his fiancée, Brittnie Schmidtt. Knowlton shared children with Schmidtt. McBride and Knowlton were having "issues" with each other around that time. On July 23, 2021, McBride sent a series of six messages to Knowlton through Facebook Messenger, which included one stating "Your f***ing hit!", and described that he had taken care of Knowlton's kids. Subsequent to these messages, Knowlton replied "bye bye." McBride then sent a message which stated "Wya [where you at] so we can settle this like men." Knowlton replied with comments that McBride supported the children with social security and food stamps. He then stated: "[Y]ou are a pervert and will be dealt with accordingly. Even if it means I do life in prison…you are a b**ch who smacks a woman around. You know where I'm at." He then provided an address: "956 West 52nd." After further discussion, Knowlton stated: "Come see me. I'm always here," to which McBride responded: "I will. Don't you worry." McBride continued "Imma show you. Better hope you can fight" and "Ain't no saving you this time." The messages concluded with Knowlton stating, "Well I'm here."

{¶5} McBride drove to the location provided by Knowlton, accompanied by two friends, Scott Lindsay and Justin Nemergut. He described that the purpose of going to see Knowlton was to engage in a "fist fight." When McBride arrived at the address given by Knowlton, which was alternately referred to as a "shop" or "garage" and Knowlton's "house," McBride got off of his motorcycle and took his pistol off of his hip, handing it to Lindsay. He then took off his shirt, hat, and glasses and began walking toward Knowlton with his hands down at his side. The two exchanged insults and profanity. While McBride approached, Knowlton pulled a gun and pointed it at McBride. McBride said "this is how we're really gonna do it," and then Knowlton opened fire. Knowlton hit McBride in the

2

bicep and the shoulder. McBride turned around, began to flee, and a third shot hit him in the back, passing through his lung. He made it past his motorcycle and went to the ground. Lindsay then handed his gun to him and McBride tried to shoot back but was unable to fire. He then started "going in and out" and could not breathe.

{¶6} McBride indicated that after the shooting, he told the police he had initially set his gun down on Lindsay's motorcycle and had retrieved his gun from the ground rather than from Lindsay. He described that he was not clear-headed at the time he spoke with police as he was in the hospital and on pain medication.

{¶7} Lindsay and Nemergut testified that they went with McBride to Knowlton's garage. Lindsay knew McBride intended to fist fight Knowlton and believed McBride contacted him to make sure he "didn't get jumped or anything." Nemergut was aware McBride intended to confront someone. Once the three men arrived at Knowlton's address, McBride took his pistol off and asked Lindsay to hold it and "took his shirt off to fight." Lindsay observed Knowlton fire shots from across the street. He saw McBride was shot, grabbed him, and dragged him out of the road. Nemergut testified that Knowlton was on the garage property while firing and McBride was standing in the road by his motorcycle. Nemergut indicated that Knowlton fired three shots, the gun jammed, he fired a few more, the gun jammed again, and more shots were fired.

{¶8} After the shooting began, Lindsay ran to his motorcycle to retrieve McBride's gun, gave it to him, but then told him not to shoot. Around that time, Knowlton left the scene. Lindsay subsequently threw the gun in the nearby grass because he was a felon who could not be in possession of a gun. He initially lied to police about McBride handing him the gun because he did not want to get in trouble. Lindsay stated that

3

McBride had not pointed a gun at Knowlton before the shooting began and McBride did not enter onto the property where Knowlton was located, explaining that McBride "never made it" to "that side of the street."

{¶9} Jerry Wheatley was visiting with Knowlton on July 23 and, during that time, Knowlton told him he "probably didn't want to hang out very long." While the two men were talking, Wheatley saw motorcycles pulling up "quickly." He saw McBride get off of his bike, take off his shirt, pull a gun from his pants, and hand it to a man who arrived with him, all of which occurred before McBride got close to Knowlton. Knowlton and McBride began yelling and McBride and his friends approached the shop. Wheatley dove behind a van and shots were fired. He heard about five or six shots and observed that Knowlton's gun jammed. Wheatley did not see anyone with McBride pointing a gun at Knowlton.

{¶10} After responding to the scene, Detective Wesley Burns of the Ashtabula City Police Department recovered two casings from the driveway area where Knowlton had been located. Officer Ryan White found McBride's firearm in a bush in the vicinity of the shooting. Knowlton was not present when police arrived at the scene.

{¶11} Avery Ellis, a friend of Knowlton's father who was present during the shooting, testified for the defense. He saw McBride and the others arrive on motorcycles, coming in "fast * * * with a purpose it would seem." McBride was yelling and ripped off his hat, glasses, and shirt, and headed toward Knowlton. He saw what he "assumed * * * was a gun" in McBride's waistband. He observed Knowlton fire from the middle of the driveway in front of the building and did not hear Knowlton make any threats. He indicated that the whole incident lasted about 30 seconds. He testified that Nemergut had a gun and "they were shooting back."

4

{¶12} The jury found Knowlton guilty of Felonious Assault and the firearm specification. A sentencing hearing was held on February 27, 2023. The court sentenced Knowlton to serve an indefinite sentence of four to six years in prison for Felonious Assault and a three-year consecutive term for the firearm specification.

{¶13} Knowlton timely appeals and raises the following assignment of error:

{¶14} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶15} Knowlton argues that his conviction for Felonious Assault was against the weight of the evidence because the evidence supported a conclusion he was acting in self-defense. He argues that the evidence supported a finding that he did not give rise to the affray and had a bona fide belief he was in imminent danger.

{¶16} "[W]eight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citation omitted.) *Id.*

5

{¶17} Knowlton's claim that his conviction for Felonious Assault was not supported by the weight of the evidence turns on his argument that the jury should have found he acted in self-defense.

{¶18} In order to convict Knowlton of Felonious Assault, the State was required to prove, beyond a reasonable doubt, that he did knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Pursuant to R.C. 2901.05(B)(1), "[a] person is allowed to act in self-defense." "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense * * * is upon the accused." R.C. 2901.05(A). "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." R.C. 2901.05(B)(1). R.C. 2901.05 "places the burden of persuasion upon the State to disprove at least one of the elements of self-defense beyond a reasonable doubt." *State v. Corey*, 11th Dist. Geauga No. 2021-G-0029, 2022-Ohio-4568, ¶ 104.

{¶19} The elements of a valid claim of self-defense include: "(1) the defendant was not at fault in creating the situation giving rise to the affray and (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Effective April 6, 2021, R.C. 2901.09(B)

6

altered the law on the duty to retreat, providing that "a person has no duty to retreat before using force in self-defense, * * * if that person is in a place in which the person lawfully has a right to be."

{¶20} Knowlton raises arguments as to each of the three prongs of the self-defense test. We agree that he had no duty to retreat in this situation as he was in a place he was lawfully entitled to be, i.e., his shop and/or home. R.C. 2901.09(B). As noted above, however, the State need only disprove one element since a valid claim of self-defense must include all three elements. *Corey*, 2022-Ohio-4568, at ¶ 104.

{¶21} As to the first element, Knowlton argues he was not at fault in "creating the situation giving rise to the affray" since McBride came to his shop, intending on harming him. McBride initiated the conversation about fighting, asking Knowlton of his location to "settle this like men" and testified he intended to engage in a "fist fight." The text messages, however, indicated that both men planned on engaging in a confrontation. Knowlton repeatedly made comments allowing or encouraging McBride to come to his location, knowing that McBride was coming to participate in a fight. After McBride asked where he was, Knowlton said "you are a pervert and will be dealt with accordingly. Even if it means I do life in prison… You know where I'm at." He provided his address and stated, "Come see me. I'm always here." It has been held that a defendant cannot avail himself of self-defense where he voluntarily becomes involved in a confrontation. *See Martin v. State*, 8th Dist. Cuyahoga No. 110919, 2022-Ohio-2580, ¶ 28. Nonetheless, even if we determined that Knowlton was not at fault for the situation giving rise to the affray, his defense would fail due to his lack of a bona fide belief that he was in imminent danger of death or great bodily harm.

7

{¶22} Knowlton argues that he had a genuine fear justifying his use of force due to McBride's demeanor once he arrived, the fact that McBride approached him aggressively, he brought friends with him, and he brought a gun to the scene. There is no question that McBride came seeking a fight and behaved in such a manner when he arrived at the scene, taking off his shirt and yelling insults while approaching Knowlton. However, given the text messages exchanged by the men, this fact was known to Knowlton when he encouraged McBride to come to his residence.

{¶23} As to the argument that Knowlton fired at McBride because he had a gun, multiple witnesses testified that McBride did not utilize his firearm or point it toward Knowlton and that McBride removed his firearm from his waistband when arriving at Knowlton's location and handed it over to a friend before approaching Knowlton. Knowlton fired multiple shots at McBride while he was approaching unarmed, according to this testimony, with Nemergut indicating McBride had not made it onto the property where Knowlton was located at the time he was shot. No physical conduct had occurred between the two men at that time. Multiple witnesses also testified that neither of McBride's friends pointed a firearm at Knowlton.

{¶24} While the defense presented the testimony of Ellis, who stated that McBride had a firearm in his waistband when approaching and believed that McBride and his friends had fired their guns, this testimony was contradicted by that of McBride, Nemergut, and Lindsay, who each testified that McBride had handed his firearm to Lindsay before approaching Knowlton. Wheatley, who was visiting Knowlton and did not know McBride and his friends, corroborated the facts that McBride handed his firearm over before approaching and that the men did not point firearms toward Knowlton. Further, the only

8

shell casings found by police at the scene were in the driveway where Knowlton had been located when the shooting occurred. "A self-defense claim is generally an issue of credibility." *State v. Olsen*, 11th Dist. Ashtabula No. 2022-A-0071, 2023-Ohio-2254, ¶ 57. "Disputes in credibility for the purposes of evaluating self-defense are best resolved by the trier of fact." *State v. Bentley*, 2023-Ohio-1792, __ N.E.3d __, ¶ 24 (11th Dist.). "'[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version' and rejected the defendant's claim of self-defense." *Id.*, citing *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 49 (10th Dist.). When weighing witness testimony supporting a claim of self-defense, the trier of fact is "free to believe or disbelieve the testimony of the witnesses" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *Bentley* at ¶ 24, citing *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43. It is evident that the jury chose to believe the testimony of the State's witnesses and we will not second-guess that determination.

{¶25} Knowlton takes issue with the fact that McBride came looking for a fight as a rationale for shooting McBride. A claim that a defendant had a bona fide belief of danger or harm has been rejected where, although the victim threatened the defendant and was "not simply an innocent bystander," the defendant "ultimately agreed to fight" the victim. *In re N.S.*, 8th Dist. Cuyahoga No. 102801, 2016-Ohio-492, ¶ 22. While McBride threatened to fight with Knowlton, Knowlton agreed that he should come over and even provided his address. He then shot McBride before either man had engaged in any physical conduct.

9

{¶26} Further, "[i]mplicit in the 'second element of self-defense, i.e., that the defendant's use of deadly force was in "good faith," is the requirement that the degree of force used was "warranted" under the circumstances and "proportionate" to the perceived threat.'" (Citations omitted.) *State v. Hare*, 11th Dist. Ashtabula No. 2022-A-0048, 2023-Ohio-1623, ¶ 22; *see State v. Rose*, 11th Dist. Ashtabula No. 2021-A-0015, 2022-Ohio-3197, ¶ 48 ("[t]he degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force") (citation omitted). Even accepting that McBride's intention was to fight Knowlton, this court has found that a jury did not err in determining that a defendant's use of force was unjustified where individuals were engaged in what was "essentially a fist fight," but the defendant then shot one of those individuals. *Hare* at ¶ 23; see *State v. Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, ¶ 60 ("Jordan [by stabbing a victim] used more force than was necessary when the men were engaged in a fist fight or tussle"); *State v. Kendricks*, 10th Dist. Franklin Nos. 10AP-114 and 10AP-115, 2010-Ohio-6041, ¶ 41 ("the jury in weighing the credibility of the various witnesses reasonably could conclude defendant was the only one firing a gun and in effect escalated a fist fight into a shoot out").

{¶27} The sole assignment of error is without merit.

{¶28} For the foregoing reasons, Knowlton's conviction for Felonious Assault in the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, P.J.,

ROBERT J. PATTON, J.,

concur.

10

Case No. 2023-A-0013