[Cite as *State v. Lee*, 2024-Ohio-4498.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                               :

    Plaintiff-Appellee,               :

                                         No. 23AP-543

v.                                             :           (C.P.C. No. 18CR-4362)

Daquan J. Lee,                               :           (REGULAR CALENDAR)

    Defendant-Appellant.              :

---

D E C I S I O N

Rendered on September 12, 2024

---

**On brief:** *G. Gary* Tyack, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Daquan J. Lee, appeals the judgment of the Franklin County Court of Common Pleas, which convicted him of one count of murder, in violation of R.C. 2903.02, an unclassified felony, with a firearm specification. For the following reasons, we overrule Lee's assignments of error and affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On August 26, 2018, a group of friends, many of whom were former high school classmates, informally gathered at an apartment at 410 Knob Hill West. The apartment was a frequent hangout spot for Lee, and it was not unusual for these friends to engage in boxing matches or fistfights for entertainment and as a way to resolve disagreements. On the evening of August 26, 2018, two of the friends, Lee and Ali Aliyow, began arguing over a marijuana deal in the kitchen. Anthony Natividad, one of the roommates at the Knob Hill West apartment, testified at trial that after the argument

became more heated, Aliyow began throwing punches at Lee. Natividad further testified that in the span of approximately five seconds after Aliyow's first punch, Lee drew a gun, pointed it at Aliyow and fired. The bullet struck Aliyow in the chest. Natividad testified that, after the gun was fired, he and Lee struggled for control of the gun until another friend, Miguel Jean Louis, helped Natividad restrain Lee on the kitchen floor. Natividad then called 911. After Aliyow was shot, Natividad remained in the kitchen with Miguel and several others until officers arrived several minutes later.

{¶ 3} On July 31, 2023, a jury trial began, which included testimony from Anthony Natividad, Kiell Fuller, and Miguel Jean Louis, all of whom witnessed the incident. The state also presented testimony from Deputy Joshua Crosby who was one of the first officers at the scene. Deputy Crosby testified that when he entered the apartment there were several individuals restraining Lee on the floor and that those individuals stated that the restrained individual was the shooter. Deputy Crosby also testified that the police detained and separated the individuals in the kitchen so they could not talk to each other.

{¶ 4} The jury also heard testimony from Special Agent Joshua Durst with the Ohio Bureau of Criminal Investigation. Special Agent Durst authenticated photographs that were taken inside the house and noted that no remarkable DNA evidence was collected.

{¶ 5} Detective Brian Meister who was assigned to the case also testified. Detective Meister testified that he and another detective interviewed Lee who initially said that he had been robbed and that Aliyow had shot himself. In the interview, Lee denied that he had shot Aliyow and instead proffered that Aliyow had pointed a gun at him. Lee later admitted that Aliyow had given his gun to another man prior to their argument. Detective Meister suggested, during his interview of Lee, that Lee shot Aliyow in self-defense, as a technique to get Lee to talk. Lee admitted that he and Aliyow were in an argument over a marijuana deal and that Aliyow had punched him in the face. Ultimately, Lee admitted that he pointed his gun at Aliyow and had pulled the trigger, but he also stated that he acted in self-defense and was afraid.

{¶ 6} Detective Meister also authenticated photographs he took of Lee that showed red marks on his cheek and an injury to his eye, indicative of a fistfight. He further testified that he had interviewed several individuals who were in the apartment and that all of them had told him there were no other guns in the kitchen during the fight. However, several

days later, Detective Meister learned that Aliyow had a gun but had given it to another individual. At trial, Natividad testified that Aliyow had a gun but, prior to Aliyow and Lee physically fighting, Aliyow had handed the gun to Wes in the kitchen in the presence of Lee. Jean Louis and Fuller also testified that Aliyow had handed his gun to Wes. Fuller testified that Wes fled from the apartment with Aliyow's gun.

{¶ 7} The state and defense also presented a joint stipulation including what would have been the testimony of Dr. John Daniels of the Franklin County Coroner's Office, who performed an autopsy of Aliyow. The parties stipulated that Dr. Daniels, if he had been called to testify, would have stated that the cause of death was a gunshot wound to the chest and the manner of death was homicide.

{¶ 8} After the prosecution rested, Lee moved for a Crim.R. 29 acquittal on the basis that the state did not put forth sufficient evidence in accordance with R.C. 2901.05(B)(1) to show that Lee did not act in self-defense. Lee argued that there was no evidence that he did not have reasonable grounds to believe that he was in imminent danger of great bodily harm. The state argued that it had proved all of the elements of murder and that it was not reasonable for Lee to have believed he was in danger of imminent death or bodily harm when he used a firearm to shoot an unarmed person after a brief fight. The court denied Lee's motion, stating that the jury could believe the testimony of any of the witnesses and that Lee did not say it was self-defense until the detective suggested it in his initial interview.

{¶ 9} On August 2, 2023, the jury returned a verdict finding Lee guilty of murder with a firearm specification in violation of R.C. 2903.11. On August 8, 2023, the trial court sentenced Lee to a term of 15 years to life in prison with an additional consecutive three-year term for a firearm specification. Lee now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Lee argues the following assignments of error:

(1) The trial court erred when it denied DaQuan Lee's Rule 29 motion for acquittal.

(2) The verdict of guilt as to count two was against the manifest weight of the evidence.

## III. LEGAL ANALYSIS

{¶ 11} In his first assignment of error, Lee argues that the trial court erred in denying his Crim.R. 29 motion. A Crim.R. 29 motion for acquittal tests the sufficiency of the evidence. *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. We thus review the trial court's denial of appellant's motion for acquittal using the same standard applicable to a sufficiency of the evidence review. *Id.*, citing *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 12} Lee argues that the prosecution did not meet its burden in disproving self-defense under R.C. 2901.05(B)(1). In 2019, the General Assembly shifted the burden of proving the affirmative defense of self-defense from a defendant and instead placed on the prosecution the burden "to disprove at least one of the elements of self-defense beyond a reasonable doubt." *State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31, citing R.C. 2901.05(B)(1) and 2019 Am.Sub.H.B. No. 228. "[S]ufficiency of the evidence is not the proper framework to review whether the state proved the absence of self-defense." *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 44. *See also State v. Vinson*, 10th Dist. No. 19AP-574, 2022-Ohio-2031, ¶ 27; *State v. Angel*, 10th Dist. No. 19AP-771, 2021-Ohio-4322, ¶ 52. This court has determined that in considering claims of self-defense, the manifest weight standard is the proper standard of review. *State v. Zafar*, 10th Dist. No. 19AP-255, 2020-Ohio-3341, ¶ 42, citing *State v. Colon*, 8th Dist. No. 106031, 2018-Ohio-1507, ¶ 16. Because a Crim.R. 29 motion for acquittal is not a valid method for challenging the state's satisfaction of its burden, we therefore overrule Lee's first assignment of error.

{¶ 13} In Lee's second assignment of error, he argues that his conviction was against the manifest weight of the evidence. We note that an appellate court reviewing a manifest weight challenge to a criminal conviction "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *State v. Thompkins*, 78

Ohio St.3d 380, 387 (1997). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for the most "exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 27.

{¶ 14} In both of his assignments of error, Lee essentially argues that the state did not disprove that Lee acted in self-defense. Specifically, he argues that the trial court erred in denying his Crim.R. 29 motion for acquittal and that his ultimate conviction was against the manifest weight of the evidence. We do not agree.

{¶ 15} When deadly force is used and the accused presents evidence that tends to support that the accused used the force in self-defense, the state must disprove at least one of the following elements of a self-defense claim: (1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) the accused did not violate any duty to retreat or avoid the danger. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 14, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 16} At trial, the state argued that Lee did not meet the second element of a self-defense claim. The second element of a self-defense claim entails "a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). The trier of fact "first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, []he *reasonably* believed []he was in imminent danger." *Id.* "Then, if the objective standard is met, the [trier of fact] must determine if, subjectively, this particular defendant had an *honest* belief that []he was in imminent danger." (Emphasis sic.) *Id.* at 331.

{¶ 17} The second element also requires a showing that " 'the defendant must have used only that force reasonably necessary to repel the attack. That is, he must not have used excessive force.' " *State v. Jamii*, 10th Dist. No. 21AP-330, 2023-Ohio-4671, ¶ 77, quoting *State v. Hall*, 10th Dist. No. 21AP-137, 2023-Ohio-837, ¶ 41, citing *State v. Kean*, 10th Dist. No. 17AP-427, 2019-Ohio-1171, ¶ 58. Further, "[i]mplicit in the 'second element of self-defense, i.e., that the defendant's use of deadly force was in "good faith," is the

requirement that the degree of force used was "warranted" under the circumstances and "proportionate" to the perceived threat.' " *Kean* at ¶ 58, quoting *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, ¶ 31. Therefore, if " ' "the amount of force used is so disproportionate that it shows an 'unreasonable purpose to injure,' the defense of self-defense is unavailable." ' " *Id*. at ¶ 58, quoting *State v. Bundy*, 4th Dist. No. 11CA818, 2012-Ohio-3934, ¶ 55, quoting *State v. Macklin*, 8th Dist. No. 94482, 2011-Ohio-87, ¶ 27, quoting *State v. Speakman*, 4th Dist. No. 00CA035, 2001 Ohio App. LEXIS 1489.

{¶ 18} Here, we are not persuaded by Lee's argument that the jury's determination that Lee did not act in self-defense was against the manifest weight of the evidence. Rather, the evidence in the record supports the jury being able to determine that Lee did not have an honest belief that he was in imminent danger of death or great bodily harm. The state presented witnesses who testified that Lee was familiar with the friend group's practice of resolving arguments with boxing matches and fistfights. Witnesses stated that Lee had been present and participated in one of these fights before and that when fights had become too one-sided the friends in the house would break up those fights before it escalated too far. According to witnesses, Aliyow had handed off his gun prior to the argument becoming physical and had made a point, in passing off the gun, that he didn't need it to resolve the issue. This occurred in Lee's presence. In fact, Lee stated in his interview with detectives that Aliyow had given his gun to one of the individuals in the apartment. (State's Ex. F at 43:03-17; 44:08.)

{¶ 19} We also note that a fact finder could reasonably determine that Lee's response was not proportionate to the perceived threat. Witness testimony indicated that it was mere seconds between when Aliyow threw the first punches and when Lee drew and fired his gun. In considering a self-defense claim involving the firing of a gun during a fistfight, this court said:

> [a]lthough the law does not quantify specifically the amount of force a defendant is entitled to use in self-defense, the jury in weighing the credibility of the various witnesses reasonably could conclude defendant was the only one firing a gun and in effect escalated a fist fight into a shoot out. As a result, even if defendant were privileged to act in self-defense, the jury could decide he exceeded the force he was entitled to use.

*State v. Kendricks*, 10th Dist. No. 10AP-114, 2010-Ohio-6041, ¶ 41.

{¶ 20} Ultimately, Lee asks this court to give greater weight to his claims of self-defense than the jury gave to the testimony of the witnesses at trial. Lee points to inconsistencies in witnesses' testimony, namely that the group of friends in the apartment lied to police when they said there was no other gun, but in fact Aliyow had a gun that night but handed it to another individual prior to the fight. However, we recognize that a " ' " self-defense [or defense of another] claim is generally an issue of credibility." ' " *Jamii*, 2023-Ohio-4671, at ¶ 78, quoting *State v. Lawrence*, 11th Dist. No. 2022-L-110, 2023-Ohio-3419, ¶ 41, quoting *State v. Olsen*, 11th Dist. No. 2022-A-0071, 2023-Ohio-2254, ¶ 57. " ' "Disputes in credibility for the purposes of evaluating self-defense [or defense of another] are best resolved by the trier of fact." ' " *Id.*, quoting *Lawrence* at ¶ 41, quoting *State v. Bentley*, 11th Dist. No. 2022-L-076, 2023-Ohio-1792, ¶ 24. " ' "It has been held that 'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version' and rejected the defendant's claim of self-defense [or defense of another]. " ' " *Id.*, quoting *Lawrence* at ¶ 41, quoting *Bentley* at ¶ 24, quoting *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 49. " 'When weighing witness testimony supporting a claim of self-defense [or defense of another], the trier of fact is "free to believe or disbelieve the testimony of the witnesses" and "is in the best position to take into account inconsistences, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." ' " *Id.*, quoting *Lawrence* at ¶ 41, quoting *Bentley* at ¶ 24, citing *State v. Haney*, 11th Dist. No. 2012-L-098, 2013-Ohio-2823, ¶ 43.

{¶ 21} Here, the jury had the opportunity to evaluate the testimony of all the witnesses at trial and we decline to displace their determination of credibility. We therefore overrule his second assignment of error.

## IV. CONCLUSION

{¶ 22} For these reasons, we overrule both of Lee's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

———————————