[Cite as *State v. Campbell*, 2024-Ohio-1693.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                        No. 112958

    v.                            :

PAYTON CAMPBELL,                        :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 2, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-669815-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Payton Campbell appeals from his judgment of conviction, which was rendered after a jury trial. After a thorough review of the facts and pertinent law, we affirm.

**Procedural and Factual History**

{¶ 2} In May 2022, appellant was charged in a ten-count indictment.[1] Counts 1, 2, and 3 named Bianca Smith as the victim and charged attempted murder in violation of R.C. 2923.02 and 2903.02(A), felonious assault in violation of R.C. 2903.11(A)(1), and felonious assault in violation of R.C. 2903.11(A)(2), respectively, all with one- and three-year firearm specifications.

{¶ 3} Counts 4, 5, and 6 named Chane'l Collins (a.k.a. "Auntie Piggy") as the victim and charged attempted murder in violation of R.C. 2923.02 and 2903.02(A), felonious assault in violation of R.C. 2903.11(A)(1), and felonious assault in violation of R.C. 2903.11(A)(2), respectively, all with one- and three-year firearm specifications.

{¶ 4} Counts 7 and 8 named Quasean Townsend as the victim and charged felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), respectively, both with one- and three-year firearm specifications. The final counts — Counts 9 and 10 — named Fatihah Majid as the victim and charged felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), respectively, both with one- and three-year firearm specifications.

{¶ 5} The charges stemmed from an incident that occurred in the early morning hours of March 26, 2022 outside the Medusa nightclub on St. Clair Avenue in Cleveland. In addition to physical altercations, the incident included gunfire from

---

[1] Appellant was charged with codefendants Ty'Juane Finley, a.k.a. "Ty Bri" and Andre Jackson.

several weapons; the shooting occurred shortly after 1:00 a.m. At trial, the state presented 11 witnesses, which included law enforcement, three of the victims (Majid, Smith, and Collins; Townsend did not testify), and an emergency department nurse who treated victim Townsend. Appellant testified as well. Much of the incident was recorded on surveillance cameras and a cell phone video, which were played numerous times for the jury and admitted into evidence. The following facts were revealed at trial.

{¶ 6} Victim Collins (Auntie Piggy) and codefendant Finley (Ty Bri) were both rap/hip-hop artists; there was animosity between the two musicians. On the evening in question, Finley and Collins performed at a concert held in the Cleveland "Flats," a neighborhood known for its nightlife. The concert organizers were aware of the animosity between the two musicians and scheduled their performances so that they did not have to see each other. Their performances occurred without incident.

{¶ 7} Appellant, an Atlanta resident, was dating Finley and was in Cleveland to see her perform. An "after-party" was scheduled to take place after the Flats concert at another club, Medusa. Appellant, who had a CCW license, had a gun that evening. Appellant testified that, besides Finley, he did not know anyone in Cleveland, including victim Collins. He did generally know of the "bad blood" between his girlfriend Finley and victim Collins, however.

{¶ 8} Both Finley and Collins had planned to attend the after-party. Finley and her entourage arrived at Medusa in a white SUV and Collins and her entourage

arrived in a black SUV. Appellant got a ride to Medusa with the boyfriend of one of Finley's friends. Appellant testified that it was his intention to secure his gun in Finley's vehicle before going into Medusa. However, he noticed a commotion upon exiting the vehicle he came in. Appellant testified that he saw his girlfriend Finley yelling at a group in a black SUV and he just looked on because "you got to observe something before you jump into it or get involved." He thought one of the people Finley was yelling at may have been Collins (Auntie Piggy) and it was confirmed when he heard someone say, "Piggy, get out of the car."

{¶ 9} Appellant eventually started walking toward the area of the commotion. He testified that as he approached, at least three people, including victim Smith and a "heavier set" male, had guns out, which prompted him to pull his gun out. However, there was some evidence tending to indicate that no one else had their guns out until they saw appellant with his gun out.

{¶ 10} People in the Finley "camp" and the Collins "camp" were arguing back and forth. Appellant testified that he initially summed the situation up as "females arguing" and he did not believe it would escalate any further than an argument. He believed the "heavy set" man with a gun out was part of Collins' security detail.

{¶ 11} According to victim Collins, on the day of the concert, codefendant Finley made a comment on social media "Piggy gone [sic] be in somebody grave yard." The message was admitted into evidence — the initiating message "thread" started at 12:24 a.m. Appellant denied knowing anything about the comment; he testified that he did not follow his girlfriend Finley on social media.

{¶ 12} The argument soon escalated to a physical confrontation, with codefendant Finley running over to victim Collins and striking her. Appellant testified that at the very moment Finley ran toward Collins, he had his back turned and did not see Finley running; had he seen her he "probably would have grabbed her." But his back was turned because he was telling the others to put their guns away. Appellant testified that at that point he figured "it's going to be a fight" and he should just "let them get it off [their] chest" because the fight had already started and he could not stop it.

{¶ 13} According to appellant, victim Smith, who was in the Collins camp, had a gun pointed at codefendant Finley and grabbed Finley's wig. It was at that point that appellant's "antennas went up" and he fired four shots at Smith. Appellant testified that he shot Smith in defense of his girlfriend, Finley. The video evidence shows that appellant shot in the direction of the club, where Townsend and Majid were standing. After being shot, Smith ran away, appellant thought the threat had abated, and so he started walking away. Appellant testified that his girlfriend Finley and Collins continued fighting even after he had shot Smith.

{¶ 14} Although appellant believed Smith was gone, Smith reappeared and pointed her gun at him. Appellant, thinking Smith was going to shoot him in retaliation, shot her again. An eyewitness, who was a friend of Collins, testified that she never saw Smith point her gun at appellant at any time during the incident. After appellant shot Smith the second time, Smith got in Collins' vehicle and appellant walked across the street.

{¶ 15} Meanwhile, Finley and Collins and their friends were still engaged in a fight. Appellant testified that he "wasn't even paying attention to the fight." Appellant believed the shooting part of the incident was over so, as he testified, "what am I going back over there for?"

{¶ 16} The fight eventually ended and those involved dispersed; appellant saw Finley get in the white SUV she had arrived in. Appellant then saw Collins with a gun chase after the vehicle Finley was in; Collins fired at the vehicle. Appellant fired at Collins in an attempt to get her to go back to "her area." Collins dropped her gun and everyone, including Collins, ran their own separate ways. Appellant testified that he heard a series of shots "coming from everywhere" toward him. He had to "duck and take cover"; he had to "creep" away from the scene. The video evidence demonstrates that the shots being fired at that time were away from the door, where victims Townsend and Majid were. Appellant was not injured in the incident and, although he testified that his girlfriend, Finley, had a "gash on her head," she did not seek medical treatment.

{¶ 17} Appellant testified that he thought about calling the police, but he did not because his "adrenalin was rushing" and after he left the scene he really did not see the point. Instead, he called his lawyer, who told him "not to worry about it," the police would contact him. Appellant acknowledged that he learned in his CCW training that he should inform law enforcement after an incident such as what occurred here.

{¶ 18} Victim Smith testified that she arrived at Medusa in the black SUV with Collins and her entourage. A security person from Medusa told the Collins group that codefendant Finley was there too and Finley had her "shoes off." According to Smith, "shoes off" indicated that Finley was ready to fight. Smith got out of the vehicle and took her firearm out, in the hope of fending off any confrontation.

{¶ 19} Smith testified that when the physical confrontation ensued, she used her gun to hit Finley on the top of her head because she was trying to protect Collins, her friend. Smith then heard gunfire and was unaware that she had been shot. She attempted to get back into the vehicle to escape the melee and, at that point, she saw appellant with a gun. According to Smith, appellant told her that he was shooting at her and that he would continue to do so. Smith testified that she was able to get back in the vehicle, and appellant continued shooting. Smith denied firing her weapon at all during the incident. She testified that she was shot in appellant's first round of firing, and after that she did not even have her gun anymore — she had dropped it and never picked it up. She testified, "I was hopping, trying to get back to the car trying to — constantly getting shot at again."

{¶ 20} Smith was treated for multiple gunshot wounds, including wounds to her thigh, back, arm and buttocks. Some of the bullet fragments remained in Smith's body. Her femur bone was shattered, which necessitated her having to have a rod placed in her leg; she had to learn how to walk again. Smith identified appellant to the police as the person who shot her. She did not tell the police that she too had a

gun that evening. Smith testified that she did not think it was important because she never fired her gun.

{¶ 21} Victim Collins testified that, upon arriving at Medusa, she initially remained in the vehicle, but Smith got attacked, so she got out and that was when she was attacked by Finley and her entourage. Collins testified that Finley told her, "b****, you about to die." Collins retrieved a "stun/taser" gun she had and began to use it on the group. Collins testified that it was at that time that appellant started shooting. Collins never told the police about the gun she had that evening because they "never asked." The portion of the video where Collins had the gun was played during her testimony. The video appeared to show "flashes" or "clouds of smoke" coming from the gun; however, Collins maintained that it was a stun/taser gun and not a "real" gun. Collins admitted that a stun gun does not emit smoke. The video evidence showed that Collins was not shot until she was in the middle of the street running toward the vehicle Finley was in; she was not shot when she initially got out of the vehicle and was involved in the physical altercation.

{¶ 22} Collins sustained numerous gunshot wounds, including wounds to her stomach, back, and arm. She was hospitalized for approximately 25 days, some of which she was in a comatose state. As of the time of trial, she had had three surgeries on her arm and anticipated having at least one more.

{¶ 23} Victim Majid, a Medusa employee who happened to be outside at the time of the incident and was caught in the "crosshairs," testified that she was grazed by a bullet, but was not sure exactly when or who fired at her. As mentioned, victim

Townsend did not testify. However, a nurse who treated him at the main campus of University Hospital, of Cleveland testified regarding him. The nurse identified Townsend on a video from a police officer's body camera. According to the nurse, Townsend arrived at the hospital via "private vehicle." He was treated for a gunshot wound to his foot. The nurse testified that she was not sure where the shooting occurred. In a portion of one of the videos played during trial, a man can be seen limping away from the scene and getting into a vehicle that was then driven away.

{¶ 24} Law enforcement discovered bullet holes in neighboring businesses and collected numerous shell casings from the scene. It was determined that the ammunition came from six different manufacturers.

{¶ 25} At the close of both the state and appellant's cases, appellant made a Crim.R. 29 motion for judgment of acquittal, which was denied both times. Appellant requested and was granted a self-defense jury instruction relative to the crimes with Smith and Collins as the victims (Counts 1-6). The trial court also instructed the jury on the doctrine of transferred intent as to the counts relative to Townsend and Majid (Counts 7, 8, 9, and 10). The jury returned guilty verdicts on the counts and specifications relative to victims Smith (Counts 1-3), Townsend (Counts 7 and 8), and Majid (Counts 9 and 10). The jury returned not guilty verdicts on the counts and specifications relative to Collins (Counts 4-6).

{¶ 26} The trial court merged counts for the purpose of sentencing and the state elected to proceed to sentencing on Count 1, attempted murder of Smith, Count 7, felonious assault of Townsend, and Count 9, felonious assault of Majid. The court

sentenced appellant to five to seven-and-a-half years on Count 1; five years on Count 7; and five years on Count 9. The sentences on those counts were ordered to be served concurrently. The trial court further sentenced appellant to the three-year firearm specifications attendant to the underlying counts and ordered them to be served consecutively for a nine-year term. The nine-year term on the firearm specifications was ordered to be served consecutively to the five to seven-and-a-half years on the sentence for the underlying charges, for an aggregate sentence of 14 to 16.5 years. Appellant now raises the following five assignments of error for our review:

I. Appellant's convictions are against the manifest weight of the evidence because [the] record establishes appellant acted in self-defense and the convictions are otherwise against the manifest weight of the evidence.

II. The Court committed plain error by failing to provide a jury instruction on transferred intent self-defense and appellant's Sixth Amendment rights were violated where defense counsel did not object.

III. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

IV. The trial court committed a reversible error by allowing West to provide testimony identifying Townsend on unauthenticated body cam[era] footage, Exhibit 19[,] over defense objection and in violation of appellant's constitutional rights to due process and a fair trial.

V. The trial court erred in imposing three consecutive terms for firearm specifications when the felonies were committed as part of the same act or transaction.

**Law and Analysis**

{¶ 27} For his first assigned error, appellant challenges his convictions as being against the manifest weight of the evidence. First, he contends that the evidence established that he acted in self-defense and, second, he contends that the convictions are generally against the weight of the evidence.

{¶ 28} When evaluating a claim that a jury verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 29} The trial court provided the jury with a self-defense instruction on the counts relative to victims Smith and Collins, which meant that the court determined that appellant presented sufficient evidence that his act of shooting was done in defense of himself and Finley. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26. Now, on appeal, in this assignment of error, appellant's challenge relative to self-defense, and the convictions in general, is whether the state

met its burden of persuasion; that is, under a manifest-weight-of-the-evidence review, whether the state met its burden of persuading the jury beyond a reasonable doubt that appellant was not acting in defense of himself or Finley when he fired his gun. *Id.*

{¶ 30} The elements of self-defense in a deadly force case are that the defendant: (1) was not at fault in creating the situation giving rise to the affray, (2) had a bona fide belief that he or she was in imminent danger of death or great bodily harm and his or her only means of escape from such danger was in the use of such force, and (3) did not violate any duty to retreat or avoid the danger. *Messenger* at ¶ 14, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶ 31} Under Ohio's "stand your ground" law, R.C. 2901.09(B), "a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be." The trial court here instructed the jury that appellant had no duty to retreat.

{¶ 32} "'A self-defense claim is generally an issue of credibility.'" *State v. Lawrence*, 11th Dist. Lake No. 2022-L-110, 2023-Ohio-3419, ¶ 41, quoting *State v. Olsen*, 11th Dist. Ashtabula No. 2022-A-0071, 2023-Ohio-2254, ¶ 57. "'Disputes in credibility for the purposes of evaluating self-defense are best resolved by the trier of fact.'" *Lawrence* at *id.*, quoting *State v. Bentley*, 2023-Ohio-1792, 218 N.E.3d 989, ¶ 24 (11th Dist.). "'It has been held that "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events

over the defendant's version" and rejected the defendant's claim of self-defense.'" *Lawrence* at *id.*, quoting *Bentley* at *id.*, quoting *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 49 (10th Dist.). "When weighing witness testimony supporting a claim of self-defense, the trier of fact is 'free to believe or disbelieve the testimony of the witnesses' and 'is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.'" *Lawrence* at *id.*, quoting *Bentley* at *id.*, citing *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43.

{¶ 33} Appellant's claim of self-defense was relative to victims Smith and Collins. The jury found appellant not guilty of the charges related to Collins, but guilty on the charges related to Smith. The result was not incredible.

{¶ 34} Appellant contends that Smith was the aggressor in the incident. By all accounts, and the video evidence, the scene was chaotic. But codefendant Finley was the one that escalated the incident by running up to Collins' vehicle and striking her. And while the evidence does support that Smith used her gun to hit Finley on the head, it does not support that Smith was the first (if she ever did at all) to fire a gun. On this record, we are not persuaded by appellant's contention that Smith was the aggressor.

{¶ 35} In terms of appellant's contention that he feared for Finley's life and there was no time to wait, the jury did not believe him. That was not incredible, especially given that he was not initially concerned, as he just looked on while the "females" got it "off their chests." Further, according to Smith, appellant told her

that he was shooting at her and that he would continue to do so. Smith testified that she was shot in appellant's first round of firing, and after that she did not even have her gun anymore — she had dropped it and never picked it up, but that even as she "was hopping, trying to get back to the car * * * [she was] constantly getting shot at again." Moreover, after he fired the first round at Smith, Finley, his girlfriend, was still entangled in a physical confrontation, but according to appellant he "wasn't even paying attention to the fight" and he did not feel the need to protect her then because he believed the shooting part of the incident was over. The jury could have considered this evidence as not tending to support appellant's claim that he was acting in self-defense.

{¶ 36} On this record, the jury's decision to disbelieve appellant's claim of self-defense relative to Smith was not against the manifest weight of the evidence.

{¶ 37} We also find that the felonious assault convictions relative to victims Townsend and Majid were not against the manifest weight of the evidence. Relative to victim Townsend, appellant contends that the state failed to prove venue; that issue goes to the sufficiency of the evidence and will be addressed under his sufficiency assignment of error.

{¶ 38} Regarding the convictions relative to Townsend and Majid generally, appellant contends that because the jury believed his self-defense claim relative to Collins, "he would not be guilty of any of those bullets [that] accidentally hit Townsend or Majid based on the transferred intent that would apply to self-defense."

{¶ 39} The doctrine of transferred intent provides that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person. *State v. Mullins*, 76 Ohio App.3d 633, 636, 602 N.E.2d 769 (10th Dist.1992). This court has not definitely held that the doctrine of transferred intent applies to self-defense claims. *See State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 71 ("it is not clear that the doctrine of transferred intent applies to self-defense."). This is not the case to decide whether it applies.

{¶ 40} We note the doctrine ensures that a person cannot escape the legal and moral responsibility of his or her acts simply because the intended victim escapes harm while an innocent person is injured. *State v. Richey*, 64 Ohio St.3d 353, 364, 595 N.E.2d 915 (1992). Here, although the jury acquitted appellant on the charges relative to Collins, it found him guilty on the charges relative to Smith. That is, it did not believe that appellant was acting in self-defense against Smith. It would negate the purpose of the doctrine to find that, although appellant was found guilty as to one victim on which his self-defense claim was based, i.e., Smith, he cannot be found guilty of injury to Townsend and Majid because he was acquitted as to the other victim on which is self-defense claim was based, i.e., Collins. The evidence shows that in appellant's first round of firings, when he hit Smith, his shots were aimed toward the door of Medusa where Townsend and Majid were standing. Townsend and Majid were innocent bystanders and, under the theory of transferred

intent, appellant cannot escape the harm he accidentally or unintentionally caused them.

{¶ 41} On this record, the first assignment of error is overruled.

{¶ 42} For his second assignment of error, appellant challenges the lack of a jury instruction on the concept of transferred intent of self-defense. According to appellant, the trial court committed plain error by not giving the instruction and his trial counsel was ineffective for failing to object.

{¶ 43} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). "A party's failure to object to jury instructions before the jury retires constitutes a waiver of any claim of error regarding the instructions, absent plain error." *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 30 (4th Dist.).

{¶ 44} Appellate courts apply the doctrine of plain error cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.* "[T]he test for plain error is stringent." *State v. Ellison*, 2017-Ohio-284, 81 N.E.3d 853, ¶ 27 (4th Dist.). "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. An error affects substantial rights only if it changes the outcome of the trial. *Id.* The defendant carries the burden to establish the existence of plain error. *Cooper* at ¶ 31.

{¶ 45} "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 26. "[A] trial court should give a proposed jury instruction if it is a correct statement of the law and is applicable to the facts of the particular case." *Id.*, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

{¶ 46} In order to establish a claim of ineffective assistance of counsel, appellant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶ 47} As discussed, it is not definitively established in this district that the doctrine of transferred intent applies to self-defense. *See Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, at ¶ 71. But even if the trial court had provided an instruction on how self-defense applies to the doctrine of transferred intent, appellant is unable to show that the result of the trial would have been different. The evidence demonstrated that Townsend and Majid were shot in appellant's first round of firings when he shot at Smith. The jury did not find that appellant acted in self-defense against Smith; as such, it would not have transferred appellant's alleged justification for the shooting of Smith to Townsend and Majid. Thus, there was no plain or reversible error in the trial court's failure to instruct the jury on how transferred intent applies to self-defense. *See Hurt* at *id.*; *State v. Terry*, 2023-

Ohio-2234, 220 N.E.3d 938, ¶ 41 (9th Dist.); *State v. Vinson*, 10th Dist. Franklin No. 19AP-574, 2022-Ohio-2031, ¶ 40.

{¶ 48} The second assignment of error is overruled.

{¶ 49} In his third assignment of error, appellant challenges his convictions based on sufficiency of the evidence.

{¶ 50} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 51} Appellant contends that the state failed to present evidence "to establish the requisite mental states that [he] acted knowingly or had any purpose to kill or cause any harm to Smith," which were necessary for the counts relative to the counts on which he was convicted.

{¶ 52} Smith testified that she was initially unaware that she had been shot. She attempted to get back into the black SUV to escape the melee and, at that point, she saw appellant with a gun. Appellant told her that he was shooting at her and that he would continue to do so. Smith testified that she was able to get back in the vehicle, and appellant continued shooting. Smith denied firing her weapon at all

during the incident. She testified that she was shot in appellant's first round of firing, and after that she did not even have her gun anymore — she had dropped it and never picked it up. She testified, "I was hopping, trying to get back to the car trying to — constantly getting shot at again." That evidence was sufficient evidence to sustain the convictions relative to Smith.

{¶ 53} Regarding the convictions for the injuries sustained by Townsend and Majid, the jury was instructed on the theory of transferred intent. The state presented sufficient evidence based on that theory. The evidence was sufficient to demonstrate that appellant intended to or was attempting to cause serious physical harm to Smith. Townsend and Majid were innocent bystanders who were standing in the line of appellant's first firings and were accidentally or unintentionally injured in the crosshairs.

{¶ 54} Further, in regard to Townsend, the state presented sufficient evidence as to venue. "In any trial, in any court, the party accused shall be allowed * * * a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Ohio Constitution, Article 1, Section 10. Pursuant to R.C. 2901.12(A): "The trial of a criminal case in this state shall be held in a court * * * in the territory of which the offense or any element of the offense was committed."

{¶ 55} "In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was

committed in the county and state as alleged in the indictment." *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), syllabus; *see also State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 22 (8th Dist.), citing *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000); *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19; and *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Ohio courts, including this court, have found sufficient evidence of venue in cases where the county and state were not specifically named. *See, e.g., State v. Smallwood*, 9th Dist. Summit No. 24282, 2009-Ohio-1987; *State v. Davis*, 8th Dist. Cuyahoga No. 84610, 2005-Ohio-289; *State v. Brown*, 7th Dist. Mahoning No. 03MA32, 2005-Ohio-2939; *State v. Combs*, 7th Dist. Jefferson No. 97JE65, 1999 Ohio App. LEXIS 5333 (Nov. 15, 1999); and *State v. Shuttlesworth*, 104 Ohio App.3d 281, 661 N.E2d 817 (7th Dist.1995).

{¶ 56} Thus, venue may be established by circumstantial evidence. *See State v. Wright*, 8th Dist. Cuyahoga No. 108026, 2019-Ohio-4460, ¶ 65, citing *State v. Wheat*, 10th Dist. Franklin No. 05AP-30, 2005-Ohio-6958, ¶ 10, 13 (although no witness testified that the offenses at issue occurred in Franklin County, state presented sufficient circumstantial evidence as to the location of the crime to establish venue).

{¶ 57} Here, victim Townsend did not testify. A law enforcement official who arrived on the scene after the incident learned that Townsend had been injured and was at the hospital. A University Hospitals emergency department nurse who treated Townsend at the hospital's main campus testified. The nurse stated that she

did not know where Townsend had been when he was shot. Townsend's medical records from that treatment, which were admitted into evidence, also did not indicate where the shooting took place. However, the medical records noted that Townsend was a bystander as a fight between two women broke out and that he heard gunshots. Video from the incident demonstrates that the shooting occurred between 1:05 a.m. and 1:07 a.m. Video evidence also shows a man limping from the scene, getting into a vehicle, and being driven away. Townsend's medical records show that he arrived at the hospital at 1:20 a.m. via "private vehicle" and that he suffered a gunshot wound to the foot. The jury was able to compare the man limping at the scene and being driven away in a car to the man who appeared on the officer's body camera at the hospital and make reasonable inferences.

{¶ 58} On this record, circumstantial evidence provided sufficient evidence for the jury to conclude that Townsend was shot at Medusa, located in Cleveland, Cuyahoga County.

{¶ 59} In light of the above, appellant's third assignment of error is overruled.

{¶ 60} Appellant's fourth assignment of error relates to Townsend and, specifically, raises a confrontation issue given that he did not testify and the emergency department nurse testified as to statements he made. Appellant also challenges the nurse's identification of Townsend from a police officer's body camera video, which he contends was not authenticated.

{¶ 61} The Confrontation Clause of the Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him [or her]." *State v. Johnson*, 2018-Ohio-1389, 110 N.E.3d 800, ¶ 33 (8th Dist.). The Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *Id.*, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Where there is no hearsay, the testimony does not violate the Confrontation Clause. *State v. Ford*, 8th Dist. Cuyahoga No. 105865, 2018-Ohio-3563, ¶ 55.

{¶ 62} Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of statements made in order to further medical treatment or diagnosis. Statements that are admissible under Evid.R. 803(4) are understood to be reliable because the effectiveness of treatment frequently depends upon the accuracy of the information related to medical professionals, and such statements are "reasonably relied on by [medical professionals] in treatment or diagnosis." *State v. Dever*, 64 Ohio St.3d 401, 411, 596 N.E.2d 436 (1992). Further, medical records are admissible under the exception to the hearsay rule for records of regularly conducted activity set forth in Evid.R. 803(6). *State v. Humphries*, 79 Ohio App.3d 589, 595, 607 N.E.2d 921 (12th Dist.1992). And in this case, appellant stipulated to the admission of the medical records.

{¶ 63} Upon review, the statements made and injuries documented by the nurse did not have the primary purpose of being testimonial. Rather, they were

made for the purpose of medical diagnosis and treatment. Moreover, appellant stipulated to the admission of the medical records. On this record, there was no violation of appellant's confrontation rights regarding the nurse's testimony and the admission of the medical records.

{¶ 64} There also was no confrontation issue regarding the nurse's testimony identifying Townsend on the police body camera video. No audio was played with the short video clip; therefore, the video did not implicate any statements made by Townsend.

{¶ 65} Appellant also contends that there was a lack of authentication of the video. Evid.R. 901 provides for the authentication or identification of evidence prior to its admissibility. It provides in relevant part that, "the authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "The authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be." *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81.

{¶ 66} The nurse testified that she recognized the place where Townsend was in the video (University Hospitals' emergency department), she recognized the clothing Townsend was wearing at the time he came in, and the video was a fair and

accurate representation of Townsend on the morning of the shooting. That testimony was sufficient for authentication.

{¶ 67} Moreover, the nurse was the sixth of the state's 11 witnesses and testified before victims Smith and Collins. Throughout the entire trial, but especially during Smith and Collins' testimonies, video from the scene at Medusa was repeatedly played. The video evidence depicted a chaotic scene, with numerous people involved. The nurse's testimony that she recognized Townsend on the police body camera video and the clothing he was wearing at the time helped to provide insight for the jury as to who and where Townsend was at the crime scene.

{¶ 68} On this record, there were no confrontation or authentication violations. The fourth assignment of error is overruled.

{¶ 69} For his final assignment of error, appellant contends that the trial court erred by imposing three consecutive terms for the firearm specifications because the underlying felonies were committed as part of same act or transaction.

{¶ 70} Ordinarily, the trial court is prohibited from imposing more than one prison term on multiple firearm specifications for felonies committed as part of the same act or transaction. R.C. 2929.14(B)(1)(b). However, there is an exception to this general rule. Specifically, the statute provides that:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall* impose on the offender the prison term specified

under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, *in its discretion, also may* impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.) R.C. 2929.14(B)(1)(g).

{¶ 71} This court has stated that although the General Assembly did not include the word "consecutive" in R.C. 2929.14(B)(1)(g), it did, in fact, create an exception to the general rule that a trial court may not impose multiple sentences on firearm specifications for crimes committed as part of the same transaction. *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2013-Ohio-1785, ¶ 10, citing *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876, ¶ 71. The trial court here imposed consecutive terms on the firearm specifications associated with the two most serious offenses as it was required to do, and in its discretion, ordered the third firearm specification to be served consecutive as well. The trial court made consecutive sentence findings on the record at the sentencing hearing and incorporated those findings into its sentencing judgment entry.

{¶ 72} The fifth assignment of error is overruled.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR